No. 18,404.

PAUL D. AMBROSE, EXECUTOR, ETC. *v.* HELEN A.
SINGLETON, ET AL.
(356 P. [2d] 253)

Decided October 24, 1960.

Mr. W. DAVID McCLAIN, Mr. EDWIN A. WILLIAMS, for
plaintiff in error.

Mr. DUANE O. LITTELL, Mr. KENNETH D. SUTTERLIN,
for defendants in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

THE parties in this cause will be referred to as they
appeared in the district court, namely, plaintiff in error
as the executor, defendants in error as petitioners or by

name, and the deceased S. Essie Philips as the testatrix or the deceased.

The testatrix died in Denver June 27, 1954. Her will dated February 6, 1953, was admitted to probate on August 9, 1954, and Paul D. Ambrose was appointed executor of the estate.

The deceased was an elderly woman in excellent health up to the time of her sudden death. She was far above average in business experience and had prospered with her investments and dealings in real estate. She drew her own will without the aid of professional advice, and the uncertainties arising from the language contained in certain paragraphs thereof caused the executor to petition the probate court for a construction of portions of the will.

The particular paragraphs of the will with which we are concerned in this cause are numbered 5 and 6. They read as follows:

"5. To my sister Helen A. Singleton, I give, devise and bequeath during her lifetime the income from the property at 4301 Gaylord Street, Denver, Colorado, legally described as follows:

"Lots 19 and 20, Block 9, South Elyria, on which the improvements 4301 Gaylord are situate, and Lots 21 and 22, Block 9, South Elyria, the vacant ground next to the improvements, City and County of Denver, State of Colorado,

And at her death, I direct that such above described property shall pass to Lillian S. Moorehead, my niece, Helen G. Lininger, my niece, and Charles E. Singleton, my nephew, share and share alike. Provided, however, that if, in the combined judgment of my sister and the hereinafter mentioned trustee it should be deemed advisable to sell said property, it shall be sold and the proceeds delivered to my sister, Helen A. Singleton.

"6. To my brother, John P. Edwards, I give, devise and bequeath the income from the property at 8765

West Colfax Ave., Lakewood, Colorado, described as follows:

"That part of the East ½ of Block 16, Smith's Subdivision, described as follows: Beginning at a point on the West line of the East Half of Block 16, Smith's Subdivision and on the North line of West Colfax Avenue, thence East along the North line of West Colfax Avenue 50 feet, thence North at right angles 200 feet, thence West 50 feet, thence South 200 feet to the point of beginning together with any and all water and water rights belonging to or used in connection with said property, including five shares of stock of The Consolidated Mutual Water Company, County of Jefferson, State of Colorado.

"At the death of John P. Edwards, or if he should predecease me, the property immediately above described shall go to his sons, James P. Edwards and Perry D. Edwards, share and share alike. Provided, however, that if it should be the combined judgment of my brother and the hereinafter mentioned trustee that the property should be sold, it shall be sold, and the proceeds shall be paid to my brother, John P. Edwards."

In the probate court the executor sought and obtained a construction of other paragraphs contained in decedent's will. No objection was raised with reference thereto and we give no further consideration to those constructions except as they may be pertinent to the questions raised by the paragraphs above quoted. With reference to paragraphs 5 and 6 the county court held that they gave to Singleton and Edwards life estates in their respective properties with contingent remainders over, subject to a defeasance if during their lifetime they and the executor shall determine that the properties be sold, then they should be sold and the proceeds resulting from such sales should become the sole and exclusive property of Singleton and Edwards, respectively. It was further held that the word "trustee" referred to "executor" and that there was no residuary clause in said will

except as to personalty. The parties accepted these constructions without objection.

It is admitted that following the foregoing construction by the probate court it was "the combined judgment" of the executor and each of the beneficiaries named in said paragraphs 5 and 6, that the real estate described therein should be sold "and the proceeds delivered" to the devisees as provided for by the will. The real estate was sold accordingly.

With reference to the property devised to Helen A. Singleton, the deceased had executed a lease thereon and had accepted a substantial sum in the form of prepaid rentals, much of which would be applicable to rentals for a period of time following her death.

With reference to the premises devised to John P. Edwards, the deceased had placed a lien thereon on June 25, 1952, to secure payment of her promissory note for the sum of $8,500.00. This real estate was also leased by the deceased and the tenant had also paid a substantial sum in advance rentals.

It is clear from the inventory of assets on file in the estate that the numerous specific gifts to brothers, sisters, nieces, nephews, stepchildren and friends were made with the intent to dispose of substantially the entire estate. The only provision in the will which would be termed a residuary clause was as follows:

"I give and bequeath unto my sister, Helen A. Singleton, such pictures, books, household goods, and personal property and effect of mine not herein otherwise disposed of."

On September 16, 1955, petitioners filed their "Petition for Construction and Interpretation of Will" in which they sought reimbursement from assets of the estate to the extent of the advance rentals and the mortgage indebtedness which had been deducted from the purchase price of the real estate devised to them by the terms of paragraphs 5 and 6 of the will. Their contention is that by the language used the testatrix intended

to transfer title free of liens and encumbrances and that it was the burden of the estate to "exonerate" to the extent of the indebtedness against the property and the amount of prepaid rentals.

The probate court agreed with the contention of petitioners and upon appeal to the district court the same result obtained and judgment entered accordingly. The executor seeks review by writ of error.

As grounds for reversal of the judgment it is contended by the executor, inter alia, that:

"The clear intent of the testatrix, as expressed in her will is that Singleton and Edwards take their respective properties under the provisions of paragraphs 5 and 6 subject to all charges, liens and encumbrances existing thereon at the time of her death."

On behalf of petitioners, it is argued inter alia, that:

"The common law doctrine of exoneration is still the law in Colorado inasmuch as it has never been abrogated by statute. The question has never been presented to the Supreme Court of Colorado. The trial courts in this instance properly applied the doctrine to the facts presented.

"The doctrine of exoneration requires that an encumbrance upon real property, which is the subject of a specific devise, be paid out of the personalty of the estate — unless the testator clearly and plainly shows in his will that the devisee shall take cum onere."

The issue of law here involves the claimed right of devisees of real estate to have the same exonerated from a lien, or a charge thereon, at the expense of the personal estate of the deceased. An exhaustive analysis of numerous cases dealing with the doctrine of exoneration will be found in 5 A.L.R. 488-507. General statements of the rule and variations thereof as applied in other jurisdictions will be found in 57 Am. Jur. 993, and 97 C.J.S. 221.

There is a marked difference of opinion in the decisions of appellate courts in other jurisdictions involving

the doctrine of exoneration. We have read many of these opinions and have considered them for the purpose of determining whether the most recent pronouncement of this court upon the question should be modified.

The case to which reference is made is entitled *Robinson v. Tubbs*, 140 Colo. 471, 344 P. (2d) 1080, which was decided after briefs were filed in the instant case but prior to oral argument. No reference was made to that opinion by counsel and we conclude that they were not informed concerning it. We think our opinion in that case is decisive of this controversy and has established a precedent by which we should be governed in the determination of claims for "exoneration" of real estate to the extent of encumbrances thereon when said real estate is the subject of a specific devise by will.

In the Robinson case the devise was made in the following language:

"I give, devise and bequeath unto my daughter, Dolores Tubbs Robinson, for and during the term of her natural life the following described real estate, situate in the City and County of Denver, Colorado: * * *"

The legal description of the property is then set forth. The devisee demanded reimbursement from the estate for the amount of taxes levied by the City and County of Denver for the year 1955, payable in 1956. The decedent died October 27, 1955.

In essence the provisions of the will in the Robinson case are identical to those in the case at bar. In holding that the daughter of the deceased was not entitled to the "reimbursement" claimed by her, or in other words, in denying the claim for "exoneration" we there said:

"Nothing in this record even remotely indicates an intention on the part of testator that claimant was to receive the property devised to her free and clear of liens, taxes and encumbrances. Testator had paid the taxes due in 1955 and devised his title to the realty to claimant and her children, no more or no less. If it had developed that his title was defective or he had no title

at all, she took under the will only what testator owned and is in no position to demand other assets of decedent's estate be used to reimburse her for taxes accrued for the year in which she took possession of the property. It is manifest that under the language of the will, which expressed testator's desires, this devise was a gift, not a conveyance carrying contractual obligations. Claimant took decedent's title to this real estate, without qualification and subject to any burdens or encumbrances existing at the time of his death.

\* \* \*

"The claimant as devisee of her father took title cum onere and subject to the burdens incident to carrying into effect the testator's wishes which stand as an all-sufficient reason for the disposition of his property and cannot be challenged by anyone claiming thereunder."

■ We think this language is tantamount to a rejection of the common law doctrine of "exoneration" as applied by courts of last resort in other jurisdictions. In substance, the Colorado rule as above stated is, that if from the will itself it affirmatively appears that the testator intended the real estate devised should go to the devisee free of any existing liens or charges, then the residuary estate, or such other asset as is indicated by the will in express terms, should be drawn upon to clear the property. In the absence of such showing of intent no "exoneration" or reimbursement can be obtained by the devisee.

It cannot be successfully contended that the will in the instant case affirmatively shows any intention on the part of the testatrix to devise the property to her brother and sister free and clear of the encumbrances and charges placed upon it by her. A careful analysis of the will in its entirety indicates an opposite intent. We believe the rule announced in *Robinson v. Tubbs,* supra, is sound and in keeping with the generally accepted views of the bench and bar in this state.

The judgment is reversed and the cause remanded

with directions to proceed in a manner consistent with the views herein expressed.

MR. JUSTICE FRANTZ and MR. JUSTICE DOYLE concur.