**Alonzo Wimberly JENKINS, Jr., and Mc-Lendon Wash Jenkins, as Executors under the Will of Martha O. Jenkins, Deceased, Plaintiffs,**

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 1275.**

United States District Court
M. D. Georgia,
Columbus Division.

Dec. 9, 1968.

Hatcher, Stubbs, Land & Rothschild, and Swift, Pease, Davidson & Chapman, Columbus, Ga., for plaintiffs.

Floyd M. Buford, U. S. Atty., Macon, Ga., and Walter J. Tribbey, Atty., Dept. of Justice, Washington, D. C., for defendant.

ELLIOTT, District Judge.

This is an action for the recovery of $26,962.73 in estate taxes plus interest thereon allegedly overpaid after assessment with respect to the estate of Martha O. Jenkins. The matter is before the Court for decision based upon fully stipulated facts which are in summary form as follows:

Martha O. Jenkins, the taxpayer or decedent, was the sister of Ada Lee Jenkins. On December 23, 1958 Ada Lee Jenkins executed a will by the terms of which she left to Martha O. Jenkins a life estate coupled with a power of invasion or consumption over certain real and personal property then owned by Ada Lee Jenkins, all of which was located in Muscogee County, Georgia. The relevant provisions of the will are substantially identical in language. A typical provision is as follows:

"Should my sister, Martha O. Jenkins, survive me, then in that event, I give, bequeath and devise to Martha O. Jenkins all my right, title and interest in and to the real estate located in Muscogee County, Georgia, in land lots Forty (40), Forty-one (41), Forty-two (42), Twenty-three (23), and Twenty-four (24) in the 18th District of said County, to have, hold, use and enjoy for and during her natural life, with full and unlimited power and authority to dispose of the same in fee simple by gift or otherwise at any time during her life without accountability to anyone, including, but not limited to, the right to sell the timber located on said property without the consent of anyone, and should my sister not dispose of my interest in said real estate during her lifetime, then on her death the same shall pass to and become the absolute property of my nephew, Alonzo Wimberly Jenkins, Jr., if he is then in life, but if he is not then in life, said real estate shall pass to, vest absolutely in and become the property of the surviving child or children of the said Alonzo Wimberly Jenkins, Jr."

On September 24, 1962 Ada Lee Jenkins died leaving an estate of real and personal property located in Georgia of the approximate value of $143,000.00. At the time of the death of Ada Lee Jenkins, Martha O. Jenkins was 82 years of age and she survived her sister by only 17 days, the date of her death being October 11, 1962. The will of Ada Lee Jenkins was not offered or admitted for probate until October 25, 1962, 31 days after the death of Ada Lee Jenkins, and 14 days after the death of Martha O. Jenkins.

After an audit of the decedent's estate tax return an adjustment was made, the effect of which was to add to the gross estate of Martha O. Jenkins an amount of $125,468.00, this being the value of property over which the Government contends Martha O. Jenkins possessed a general power of appointment pursuant to the provisions of the will of Ada Lee Jenkins. The deficiency resulting from this adjustment was paid by the Plaintiffs and after the rejection of their claim for refund this suit was commenced.

The question presented is whether in these unusual circumstances Martha O. Jenkins had at the time of her death a general power of appointment over her sister's estate within the meaning of § 2041(a) (2) of the Internal Revenue Code.

The pertinent statutes are as follows:

"(2) POWERS CREATED AFTER OCTOBER 21, 1942.—To the extent

of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive. A disclaimer or renunciation of such a power of appointment shall not be deemed a release of such power. For purposes of this paragraph (2), the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised."

*Sec. 2041(a) (2), Internal Revenue Code.*

"(1) GENERAL POWER OF APPOINTMENT.—The term 'general power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—

(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment."

*See 2041(b) (1) (A) Internal Revenue Code.*

The Plaintiffs' first contention is that no general power of appointment in Martha O. Jenkins was created by the will of Ada Lee Jenkins since the powers granted to Martha O. Jenkins under the will were not exercisable in her favor or in favor of her estate and that therefore such power did not qualify as a general power of appointment under Sections 2041(b) and 2041(a) (2) of the Internal Revenue Code.

This contention of the Plaintiffs appears to be consistent with the decision of the Fifth Circuit Court of Appeals in United States of America v. Bank of Clarksdale, Executor of the Estate of Mae Suddoth Barr, deceased, 346 F.2d 638 (1965). In that case a husband had executed a will under the terms of which he had bequeathed to his wife a life estate in all of his property with an unlimited power of encroachment and consumption with remainders to certain other persons, and the decision in that case turned on the question whether the wife had received a general power of appointment under the will of her husband. In that case the United States took two positions, first contending that there was no general power of appointment and contending in the alternative that if there was such a general power it was not exercised. The case arose in Mississippi and the Supreme Court of Mississippi had construed the will involved as devising to Mrs. Barr a life estate in all of the property of her husband with an unlimited power of disposition. The District Court *assumed* that there was a general power of appointment. The Court of Appeals disagreed and reversed the District Court, holding in favor of the contentions of the United States, concluding that there was no general power of appointment since such power of appointment, if any, as Mrs. Barr received could not be exercised by her will. In its opinion the Court of Appeals stated that the husband intended his wife's power of disposition over his property to be *inter vivos* only, concluding that "Mrs. Barr did not receive a power of appointment under the will of Mr. Barr capable of being exercised by her will. It follows that the property is not properly includable in her estate under 26 U.S.C.A. § 2041 * * *" (p. 642). In the body of its opinion the Court of Appeals reviewed the applicable

Mississippi law which was relied upon by the United States and concluded that under the Mississippi law a life estate with an unlimited power of *inter vivos* disposition over the property involved did not include a power in the life tenant to appoint by will. An examination of the Mississippi cases discussed by the Court of Appeals indicates that the law of Mississippi is the same as the law of Georgia except that we are impressed that it may be even clearer under the law of Georgia that a life estate with an added power of disposal conferred upon the life tenant does not enlarge the life estate into an estate in fee and does not include any right in the life tenant to dispose of the property by will, for in Jenkins, Executrix v. Shuften, et al., 206 Ga. 315, 57 S.E.2d 283 (1950), the Supreme Court of Georgia said (headnote 2):

"A power of disposition contained in a will and the mode of its exercise, when the latter will have the effect of cutting out executory devisees, will be strictly construed; and when such power of disposition must be exercised by the holder of a defeasible fee during his lifetime, he is not authorized to dispose of the property by will, but only by an inter vivos conveyance."

The Court of Appeals in the *Barr* case stated that its decision was on the basis of relevant Mississippi decisions which "we must look to for direction in this regard". The relevant language of the will of Ada Lee Jenkins is: "I give, bequeath and devise to Martha O. Jenkins all my right, title and interest * * * to have, hold, use and enjoy for and during her natural life with full and unlimited power and authority to dispose of the same in fee simple by gift or otherwise at any time during her life without accountability to anyone, including, but not limited to, the right to sell the timber located on said property without the consent of anyone * * *". Since it is clear that such language under Georgia law does not authorize the disposition of the property by will, but only by an *inter vivos* conveyance, it does not appear

that the case now before the Court can be distinguished in any way from the *Barr* case, and we are therefore led to conclude that no general power of appointment in Martha O. Jenkins was created by the will of her sister.

The Plaintiffs' second contention is that since the will of Ada Lee Jenkins had been neither filed for probate nor offered for probate nor probated prior to the death of Martha O. Jenkins it follows that at the date of the death of Martha O. Jenkins she did not have or possess an exercisable general power of appointment under or by virtue of the will of her sister, and therefore had no taxable power of appointment under §§ 2041(a) (2) and 2041(b) (1) of the Internal Revenue Code.

In Townsend, Executor v. United States, 232 F.Supp. 219 (1964), the United States District Court for the Eastern District of Texas dealt with this same question in a setting factually similar to the case now before us. In that case it appeared that on May 10, 1951 a husband executed a will bequeathing to his wife all of his estate for and during her natural life with remainder to the testator's children, and under the terms of the will he gave his wife the "full and unrestricted right, power and authority during her natural life to use, enjoy, manage, control, pledge, mortgage, sell, give or otherwise dispose of, except by will, all or any portion of said property the same as though she were the owner in fee simple thereof," but providing that any remainder at her death should be divided among designated children. On May 18, 1959 the husband died and 6 days later, on May 24, 1959, the wife died. At the time of the widow's death the husband's will had been neither offered for probate nor admitted to probate, and subsequent to the death of the wife the will of the husband and the will of the wife were filed for probate and duly admitted to probate. In that case the Government contended that the entire net estate of the husband was includable in the estate of the wife for estate tax purposes by vir-

tue of the general power set out in the will. The Court rejected that contention, concluding that:

> "* * * because the will of Mr. Musgrove had neither been probated nor offered for probate at the time of Mrs. Musgrove's death, Mrs. Musgrove did not, at the time of her death, possess the power of appointment conferred upon her in her husband's will. Thus it follows that the Internal Revenue Service erroneously included in the tax estate of Mrs. Musgrove the entire net estate of J. W. Musgrove, of which he died seized and possessed."

The Court's ruling is succinctly stated in the third headnote of the opinion as follows:

> "Where widow died before will of husband was probated or offered for probate, she had no 'power of appointment' under will within meaning of statute providing that decedent's gross estate for estate tax purposes shall include value of all property over which decedent at time of his death had general 'power of appointment'."

The District Court gave consideration to the appropriate provisions of the Probate Code of Texas, concluding that the power of appointment conferred upon the wife did not of itself vest in the wife any estate in the property bequeathed and devised to her, stating that "such a power of appointment is no more than a personal privilege or a mere authority. It is not her property or a property right or interest in property" (p. 222).

The facts in this case now before us and the applicable Georgia law present a case as strong or stronger than the *Townsend* case presented to the District Court in Texas.

Under Georgia law a power of appointment is not an estate and has none of the elements of an estate. Patterson & Company v. Lawrence, 83 Ga. 703, 10 S.E. 355, 7 L.R.A. 143 (1889). Further, Item 16 of the will of Ada Lee Jenkins provides in part that "* * * *upon the probate and admission to record* of this my will, it is my desire that my executrix, executors or executor, administer my estate * * *". (Emphasis supplied.) Coupled with this specific provision of the will it is clear that under Georgia law the assent of the executor is necessary to pass title to any devise or legacy because the Code of Georgia Annotated provides in Title 113–801 that:

> "All property, both real and personal, being assets to pay debts, no devise or legacy passes the title until the assent of the executor is given to such devise or legacy."

As heretofore noted, the will of Ada Lee Jenkins was not filed for probate until after the death of Martha O. Jenkins and the evidence further shows that it was some months after the death of Martha O. Jenkins before there was any assent by the executors to any bequest or devise under the will of Ada Lee Jenkins. A will must be probated in Georgia before it can become effectual. Chidsey, et al. v. Brookes, et al., 130 Ga. 218, 220, 60 S.E. 529 (1907); Foster, et. al. v. Foster, et al., 207 Ga. 519 at 527, 63 S.E.2d 318 (1951).

Applying the legal principles heretofore discussed to the facts of this case we deem it to be clear that under Georgia law Martha O. Jenkins could receive no exercisable power of appointment under or by virtue of the will of her sister, the will having neither been filed for probate nor offered for probate nor probated prior to the death of Martha O. Jenkins. Moreover, it is clear that Martha O. Jenkins received no property rights nor interest in property by virtue of the will of Ada Lee Jenkins since a power of disposal under Georgia law is not a property right or interest in property, and since a life estate could not pass to or vest in Martha O. Jenkins because the will of Ada Lee Jenkins had not been probated at the time of the death of Martha O. Jenkins and because the executors named in the will had not qualified nor assented to any devise or legacy in favor of Martha O. Jenkins or any other person.

208

■ In support of their position Counsel for the Government place considerable stress upon what counsel describe as the distinction between pre-1942 powers of appointment and post-1942 powers of appointment, stating the distinction to be that "pre-1942 powers are taxable only if *exercised* * * * while post-1942 powers are taxable regardless of whether they are exercised", calling our attention to the decision in United States v. Merchants National Bank of Mobile, 261 F.2d 570 (5 Cir. 1958). We recognize that the statutes heretofore quoted make this distinction, but what we are dealing with here is a power which not only was not exercised but was not *exercisable*, and the statutes recognize that for a general power to be includable in an estate for tax purposes it must be exercisable. Indeed, the definition of the term "general power of appointment" as found in § 2041(b) (1) of the Internal Revenue Code is that the term "means a power which is *exercisable* in favor of the decedent, * * *". (Emphasis supplied.)

An examination of the decision in United States v. Merchants National Bank of Mobile, supra, shows that the Court in that case recognized the essential distinction between a power which has been created and has become exercisable and a power on the other hand which might have been created and possessed, but has not become exercisable. In the body of the opinion the Court stated:

"[2, 3] Undoubtedly, at or before the time of the taxable event, that is, at or before the death of the decedent, *the power must be exercisable in order for its mere possession to be taxable,*" (emphasis supplied) "for Section 811(f) (2) states that the value of the gross estate of a decedent includes the value at the time of death 'to the extent of any property with respect to which the decedent *has at the time of his death* a general power of appointment created after October 21, 1942 * * *.'" (Emphasis in original.)
"If the power of appointment is exer-

cisable at the time of death, it is not material that it was theretofore subject to certain conditions * * *" (p. 573).

"* * * *On the other hand, if the power is conditioned upon an event which had not occurred at the time of the decedent's death, the appointive property is not taxable as a part of the decedent's estate * * *"* (p. 573). (Emphasis supplied.)

"* * * *If exercisable at the time of death, there is that essential control over the property, and shifting of the economic benefits to make the appointive property taxable as a part of the decedent's estate."* (Emphasis supplied.)

"Clearly enough, then, *at the time of the incidence of the tax a general power of attorney must be exercisable.* The verb and phrase used in reference to that moment, 'has at the time of his death,' are definite in denoting one precise instant of time. On the other hand, 'created on or before October 21, 1942' connotes some idea of the past and of the future." (Emphasis supplied.)

"The fact that a general power of appointment must be exercisable at the time of the decedent's death does not prevent the tracing of its creation back to a time before it became exercisable. It is said that Athena sprang full-grown from the brain of Zeus, but not every power is exercisable when the instrument from which it is derived first becomes effective. 'Create' ordinarily implies going back to the very beginning of a thing, as for example, 'God *created* the heaven and the earth,' Genesis, c. 1. It may well be argued, we think, that these general powers of appointment had their beginning, were 'created', for a long while before they became exercisable." (pp. 573, 574) (Emphasis in original.)

■ The Plaintiffs' third contention is that no general power of appointment in Martha O. Jenkins was created by the will of Ada Lee Jenkins because the

powers, if any, received by Martha O. Jenkins under her sister's will were limited by an ascertainable standard relating to the support or maintenance of Martha O. Jenkins, there being no need on her part to consume, invade or appropriate property constituting assets of the estate of her sister and that for this reason such powers did not qualify as a general power of appointment under §§ 2041(b) (1) (A) and 2041(a) (2) of the Internal Revenue Code.

In this connection the evidence shows that at the time of her sister's death Martha O. Jenkins was 82 years of age and was possessed of a substantial estate in her own right consisting of real and personal property having a value of approximately $150,000.00. The evidence further shows that the two sisters lived in a very conservative manner, growing their own vegetables and raising their own chickens and spending not more than about $5.00 a week for groceries. They wore black cotton dresses and would spend money on nothing unless it was absolutely necessary. It is interesting to note that they resisted until the end the urgings of their relatives that they buy themselves a television set, which fact may be regarded not only as evidence of their frugality but as a monument to their discretion.

The Court is convinced that Martha O. Jenkins would never have encroached upon her sister's estate to satisfy any of her own meager wants or needs, first because she had no need to do so, and second because the remaindermen named in her sister's will were the same remaindermen who were the beneficiaries under her own will later probated, but the question is not what she *would* have done with the property, but rather what she *could* have done with it.

The power with respect to real estate passing under the will was as follows:

"Should my sister, Martha O. Jenkins, survive me, then in that event, I give, bequeath and devise to Martha O. Jenkins all my right, title and interest in and to the real estate located in Muscogee County, Georgia, in Land Lots Forty (40), Forty-one (41), Forty-two (42), Twenty-three (23), and Twenty-four (24) in the 18th District of said County, to have, hold, use and enjoy for and during her natural life, *with full and unlimited power and authority to dispose of the same in fee simple by gift or otherwise at any time during her life without accountability to anyone*, including, but not limited to, the right to sell the timber located on said property without the consent of anyone, and should my sister not dispose of my interest in said real estate during her lifetime, then on her death the same shall pass to and become the absolute property of my nephew, Alonzo Wimberly Jenkins, Jr., if he is then in life, but if he is not then in life, said real estate shall pass to, vest absolutely in and become the property of the surviving child or children of the said Alonzo Wimberly Jenkins, Jr." (Emphasis added.)

It is to be noted that the power is to convey her sister's property by "gift or otherwise" during the devisee's lifetime and it is difficult to see how such language creates "an ascertainable standard relating to the support or maintenance of taxpayer", as contended by the Plaintiffs. Under Georgia law the language used in the will gave Martha O. Jenkins the free right to consume or give away her sister's property. On less sweeping language the Supreme Court of Georgia in Williams v. Jones, 219 Ga. 45, 131 S. E.2d 553 (1963), refused to find any implied restriction on the use of property. It is clear that if a testator uses language to limit the circumstances under which a power can be exercised the Georgia courts will enforce that intent. Thus, in Osborn v. Morrison, 219 Ga. 169, 132 S.E.2d 58 (1963), a will which gave a widow rights of invasion only if she "is in need of funds for her support and maintenance" was interpreted by the Court to mean that the widow did not have the right to convey a fee simple title to the property *unless* she was in need of funds for her support and main-

tenance, thus following the expressed intent of the testator just as the Court had done earlier in the *Williams* case when it refused to find an implied restriction on a right to invade and consume the estate. The plain rule of these two decisions is that in Georgia the expressed intent of the testator will be followed and that no "support and maintenance" limitation will be implied. Applying this test to the will of Ada Lee Jenkins we can only conclude that the will gave Martha O. Jenkins an unlimited right to consume or give away *inter vivos* any or all of her sister's property regardless of whether such encroachment was for support and maintenance or for some other purpose.

In support of the contention here made Counsel for Plaintiffs cite and rely upon a decision by our distinguished predecessor, Judge T. Hoyt Davis, in Schwab v. Allen, D.C., 78 F.Supp. 234 (1948), wherein it was held that the power of encroachment given the husband under the will of his wife came within the exception in that there was no likelihood, considering the husband's circumstances, that he would ever have encroached upon the corpus of the wife's estate. An examination of the language of the will there under consideration, however, shows that the power given the husband was not unlimited for there the testator provided that "the entire income from my estate shall be paid to my beloved husband, Otto Schwab, during his life, with the privilege to my said husband to encroach upon the principal or corpus to such extent as in his sole judgment *is necessary or desirable from the standpoint of his welfare.*" (Emphasis supplied.) The clear implication of this language was that the power was to be exercised only in the event of the need of the husband to do so. The language used in that instrument is in sharp contrast with the language used in the will of Ada Lee Jenkins.

In summary, we sustain the Plaintiffs' first contention that no general power of appointment was created and the Plaintiffs' second contention that the

decedent at the time of her death did not have or possess an exercisable general power of appointment, but we find the Plaintiffs' third contention, that any power which may have been conferred was limited by an ascertainable standard, not to be sustained.

The Defendant's fourth contention to the effect that the inclusion of the value of the property constituting assets of the estate of Ada Lee Jenkins as a part of the gross estate of Martha O. Jenkins and the assessment of a tax deficiency based on such inclusion, is contrary to law and constitutes a deprivation of the property of Martha O. Jenkins without due process of law presents a constitutional question which we do not find it necessary to decide in view of the rulings here made on the Plaintiffs' other contentions.

Consistent with the foregoing, judgment as prayed for will be entered for the Plaintiffs, the form of which will be prepared and submitted by counsel.